IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| GREGORY GORDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 1:24-cv-00105 |
| ) | |
| BUCKY ROWLAND and JENNY ) | JUDGE CAMPBELL |
| BRUNSON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Pro se inmate Gregory Gordon, while incarcerated at the Maury County Jail,[1] filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1 ("the Complaint")) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 7.)

This case is before the Court for ruling on Plaintiff's IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. PAUPER STATUS

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because Plaintiff's IFP application complies with the applicable statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee, his IFP application (Doc. No. 7) is **GRANTED**.

---

[1] On August 12, 2025, Plaintiff notified the Court that he had been moved to the Lawrence County Jail. (Doc. No. 9.)

Nevertheless, prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350 instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and may be paid in installments over time via an assessment against his inmate trust account. 28 U.S.C. § 1915(b)(1)–(2).

Accordingly, Plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

**A. Legal Standard**

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

Plaintiff filed the Complaint under Section 1983, which authorizes a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. The Complaint must therefore plausibly allege (1) a deprivation of a constitutional or other federal right, and (2)

3

that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

**B. Factual Allegations**

Plaintiff sues Maury County Sheriff Bucky Rowland and the "head nurse" at the Maury County Jail, Jenny Brunson. (Doc. No. 1 at 2.) He asserts a state law claim for improper medical treatment. (*See id.* at 3 (citing Tenn. Code Ann. § 41-21-204(b) ("Any inmate who is ill shall receive proper medical treatment.")).) Plaintiff alleges that he arrived at the Jail on June 3, 2024, and the next day he notified a nurse named Preciado and an unnamed "medical provider" that he had chronic psoriasis and was under the care of an outside physician, Dr. Gold, with whom his next treatment was scheduled for June 17. (*Id.* at 4.) These medical staff members failed to follow up with Dr. Gold.

The next communication Plaintiff had with Jail medical staff was on July 28, 2024, when he lodged a "request for cream [his] mother bought." (*Id.*) Then, on August 2, 2024, Plaintiff filed a "grievance to Jenny Brunson." (*Id.*) By that time, his psoriasis had spread over his entire body, causing pain and discomfort. (*Id.*) His grievance mentioned his use of triamcinolone cream, which was the cream delivered to the Jail by his mother. (*Id.* at 4.) In response to his August 2 grievance, Plaintiff was prescribed methotrexate, but only four pills weekly instead of five, and Plaintiff missed a week of treatment that he should have received. (*Id.* at 4, 5.) Three months later, on November 14, 2024, Plaintiff was returned to Dr. Gold's office, where he "received the injection [he] should have received in June." (*Id.* at 5.)

Based on the allegedly inadequate medical treatment Plaintiff received in the Maury County Jail between June and November of 2024, Plaintiff seeks an award of damages. (*Id.* at 5, 6.)

4

**C. Analysis**

The Court liberally construes the pro se Section 1983 Complaint to claim a violation of Plaintiff's Eighth Amendment right to adequate medical care. A claim of deliberate indifference to serious medical needs in violation of the Eighth Amendment has both an objective and subjective component. The objective component requires that Plaintiff's psoriasis flare-up present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018), i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If it does, the subjective component requires that Defendants understood yet consciously disregarded his need for medical treatment. *See Rhinehart*, 894 F.3d at 738. Deliberate indifference has thus been described as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

Even affording the Complaint a liberal construction and viewing its allegations in the light most favorable to Plaintiff, it does not support a plausible claim that Plaintiff's constitutional right to adequate medical care was violated by either named Defendant. According to the Complaint, on June 4, 2024, Plaintiff advised "nurse Stephani Preciado and the medical provider" of his psoriasis and upcoming appointment with his physician, Dr. Gold, but "they failed to follow up with Dr. Gold or [the] treatment" Plaintiff received from him. (Doc. No. 1 at 4.) Plaintiff's next alleged communication with anyone at the Jail about his psoriasis was on July 28, 2024, when he

made a "request for [the] cream [his] mother bought" for him. (*Id.*) Shortly thereafter, with his psoriasis significantly flared up, Plaintiff filed his August 2 "grievance to Jenny Brunson." (*Id.*)

For purposes of initial review, the Court finds that the painful psoriasis flare-up alleged here presented a sufficiently serious need for medical treatment of which Defendant Brunson was aware. But Brunson did not disregard that need. Plaintiff was evidently using triamcinolone cream (a prescription corticosteroid[2]) prior to grieving the matter to Brunson on August 2; he states that "[t]he triamcinolone cream . . . spoken of in the grievance" had previously been delivered to the Jail by his mother. (Doc. No. 1 at 4.)[3] After "[t]he psoriasis got worse and [Plaintiff] filed [his August 2] grievance" (*id.* at 4, 5), he was prescribed 4 doses per week of methotrexate (a powerful oral medication used to treat various forms of cancer, rheumatoid arthritis, and severe psoriasis[4]) before having his weekly doses increased to 5 later in August. (Doc. No. 8 at 6–7.) Months later,

---

[2] https://www.mayoclinic.org/drugs-supplements/triamcinolone-topical-application-route/description/drg-20073937 (last visited Sept. 10, 2025).

[3] Plaintiff subsequently filed copies of his grievances and Defendant Bruson's responses thereto on the record of this case. (Doc. No. 8.) The Court may consider those grievances in the course of this initial review. *See Alshimary v. Russell*, No. 2:24-CV-182, 2025 WL 88102, at *2 (W.D. Mich. Jan. 14, 2025) (screening complaint under PLRA, including by "look[ing] outside the allegations in the complaint," to documents on file that are referenced in the complaint) (citing, *e.g.*, *Nixon v. Wilmington Trust Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008) (noting that a court reviewing a motion to dismiss "may consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims")). The grievances disclose that, when Plaintiff complained to Brunson on August 2, 2024, stating "I'm now breaking out because I haven't been treated," Brunson responded that same morning as follows: "You are receiving the triamcinolone cream and you have seen our provider. Are you wanting the Stellara injection? If so, if a family member can bring that to us we can give it to you. I, however, am not able to get this from our pharmacy. If you are wanting something else, I just need to know what that is and what pharmacy you normally fill at." Brunson followed that response with the August 5 addendum that she had spoken with Plaintiff and he agreed with the plan "to start methotrexate if labs are good." (Doc. No. 8 at 2 (cleaned up).)

[4] https://www.mayoclinic.org/drugs-supplements/methotrexate-oral-route/description/drg-20084837 (last visited Sept. 10, 2025).

on November 14, 2024, he was taken to his outside doctor, Dr. Gold, who provided the injection Plaintiff alleges he "should have received in June." (*Id.* at 5.)

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law," unless "the medical attention rendered [is] so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Insofar as Plaintiff complains that Defendant Brunson failed to adopt the treatment plan (including injections) administered by Dr. Gold and instead oversaw his treatment with triamcinolone cream and (initially) 4 instead of 5 doses of methotrexate per week, he has failed to assert a plausible claim of deliberate indifference. "An inmate's disagreement with the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation. Nor does a desire for additional or different treatment . . . suffice to support an Eighth Amendment claim." *Rhinehart*, 894 F.3d at 740 (citations and internal quotation marks omitted). At best, Plaintiff's allegations support (and the Complaint explicitly asserts) a state law claim that the treatment Brunson delivered was not proper for his condition—a claim that is not cognizable under Section 1983. *See Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid [§ 1983] claim.").

To the extent that Plaintiff is attempting to claim deliberate indifference based on the failure to treat his chronic psoriasis preventatively in June and July 2024, he has not made that claim against a named Defendant. Brunson is not alleged to have been involved with Plaintiff's care prior to August of 2024, and the other named Defendant, Sheriff Rowland, is only mentioned in the Complaint as having "never received a notice" regarding Plaintiff's medical needs because

7

Case 1:24-cv-00105   Document 10   Filed 09/15/25   Page 7 of 9 PageID #: 51

of Brunson's disregard for Plaintiff's concerns. (Doc. No. 1 at 4.) Without knowing of an alleged deprivation of Plaintiff's rights and taking some action that at least encouraged that deprivation, Sheriff Rowland cannot be held liable under Section 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (supervisory liability under § 1983 requires allegation that supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it"). Liability does not attach simply because a supervisor failed to act, or because he "was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)); *see Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability.") (citing *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991)). Nor is any claim to deliberate indifference (versus mere negligence) plausibly pled against non-defendants Stephani Preciado and the unnamed medical provider who, after a single interaction following Plaintiff's arrival at the Jail in June 2024, when his skin was "completely clear" (Doc. No. 8 at 4), "failed to follow up with Dr. Gold." (Doc. No. 1 at 4.) *See Imperati v. Semple*, No. 3:18-CV-1847(RNC), 2024 WL 2052138, at *12 (D. Conn. May 7, 2024) (finding that nurse could not be liable for deliberate indifference when, "[g]iven the information available to her, [a substantial] risk was not plainly obvious or easily perceptible"; allegation that nurse should have suspected heightened risk "and should have followed up to ensure [inmate] was seen by an ENT sound in negligence not deliberate indifference").

Lastly, the Complaint's naming of Defendants Rowland and Brunson in their official capacities does not support any plausible claim against their employers. Municipal and corporate employers can only be held liable under Section 1983 if their respective policies or customs were the "moving force" behind the plaintiff's injuries. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th

Cir. 2010) (citations omitted); *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014). Plaintiff has not alleged that his treatment at the Jail was dictated or influenced by any policy or custom of Maury County or any healthcare company with which the County may contract for its inmates' medical care.

In sum, the Complaint fails to state a claim upon which relief may be granted and will be dismissed on that basis.

### IV. CONCLUSION

For the reasons given above, this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. The dismissal is without prejudice to the plaintiff's ability to pursue a state-law claim for negligent or otherwise improper medical care in state court.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE